# CHARLESTON.

STATE *v.* HOWARD MALE

(No. C. C. 401)

Submitted April 12, 1927.    Decided April 19, 1927.

CRIMINAL LAW—*Where Evidence at Former Trial Justified Submitting Case to Jury, Which Failed to Agree, Plea of Autrefois Acquit Was Demurrable; Evidence of Stealing Chickens at Former Trial Held to Justify Submitting Case to Jury Later Discharged, rendering Plea of Autrefois Acquit Demurrable (Code, c. 159, § 7).*

Where on the trial of a criminal case the jury failed to agree upon a verdict and were discharged by the court, and on a retrial ordered, the defendant interposes a plea of *autrefois acquit*, alleging that because of the failure of the State to produce any evidence to connect him with the offense charged and proved to have been committed, it was the absolute duty of the trial court to direct a verdict of acquittal, and that the discharge of the jury without the defendant's consent amounted to an acquittal, and the plea incorporates thereon all the evidence adduced by the State, the defendant offering none, from which evidence it appears that the court was justified in submitting the case to the jury, the State's demurrer to the plea is properly sustained.

(Criminal Law, 16 C. J. §§ 408, 2299.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Certified Questions from Circuit Court, Taylor County.

Howard Male was prosecuted for breaking and entering and stealing chickens, and, after sustaining the State's demurrer to his plea of autrefois acquit, the trial court certifies questions.

*Ruling sustained.*

*Howard B. Lee,* Attorney General, and *J. Luther Wolfe,* Assistant Attorney General, for the State.

*W. Bruce Talbott,* for defendant.

MILLER, JUDGE:

The defendant was tried on an indictment charging him, Ted Dalton and Palace Parsons with breaking and entering

a chicken house and stealing and taking away twenty-one chickens. Defendant elected to be tried separately. He introduced no evidence, and at the close of the State's testimony, moved the court to exclude the evidence and direct a verdict in his favor. The court overruled his motion and submitted the case to the jury. The jury failed to agree upon a verdict, and were discharged by the court.

When the case was later called for a second trial, the defendant interposed a plea of autrefois acquit, alleging that there being no evidence on the former trial to connect him with the offense charged, it was the absolute duty of the trial court to direct a verdict of acquittal, and that the discharge of the jury without arriving at a verdict, without his consent, amounted to an acquittal. The trial court sustained the State's demurrer to the plea, and certified to this court the questions arising on the correctness of said ruling. The plea incorporated all the proceedings had on the former trial, including the evidence before the court and jury.

Defendant's counsel admits the right of the trial court, under section 7 of chapter 159 of the Code, to discharge a jury in a criminal case when it appears that they can not agree, or that there is manifest necessity for such discharge. He relies solely on the proposition advanced, that where there is no evidence to connect the defendant with the crime charged, it is the absolute duty of the court to direct a verdict of acquittal, and that in such case the discharge of the jury without a verdict, unless the defendant consents thereto, amounts to an acquittal. All of the argument presented on the hearing here assumes that the State failed to produce evidence tending to prove the guilt of defendant.

We have examined the evidence made a part of the plea in question. It appears that the chicken house of one Hertzog was broken into in the nighttime, and twenty-one chickens carried away. The morning after the breaking and larceny the chickens' heads were found just outside the chicken house. A deputy sheriff and one or more members of the state department of public safety were soon informed of the theft. In some manner it was suggested to the officers that the de-

fendant, Dalton and Parsons were suspected of the crime. The officers encountered Parsons on the public road somewhere not far from Hertzog's residence coming out from the city of Grafton in a taxicab. He said he was going out home; but the taxi driver volunteered the information that they were going after chickens. The officers accompanied them and found twenty chickens, in two baskets covered with white cloth, hidden in some laurel by the river bank. The officers obtained the information, probably from Parsons, that the chickens had been sold to Baker's Meat Market. They took Parsons to Grafton, and found the defendant standing by the meat market, and Dalton in a hot dog stand near by. All three men were arrested and placed in jail. Then, the deputy sheriff and another officer returned to the vicinity of where Hertzog lived, and near an unoccupied house belonging to one Kennedy, between Hertzog's residence and where the three accused men lived, they discovered where the chickens had been dressed for market, and forty-two chicken feet lying in a pile. There was snow on the ground, which assisted the officers in following the movements of the chicken thieves.

Hertzog testified that about ten o'clock in the morning he saw Ted Dalton, Palace Parsons and the defendant going along the road not far from his home carrying two baskets covered with white cloth, defendant carrying one of the baskets on his shoulder. He could not say that the baskets were the same as those in which the dressed chickens were afterwards found, but testified that they were the same kind of baskets. The witness Sarah Norris testified that on her way to Grafton early the same morning she saw Howard Male near the Kennedy house, and that he went down below the road into a little thicket. The road lies near to and parallels the river. Mrs. Norris said there were two other men with defendant, one of whom she thought looked like Ted Dalton.

Defendant's counsel puts much stress on the testimony of Harry L. Baker, the proprietor of the meat market where it is claimed the defendant, Parsons and Dalton had sold the chickens. He testified that his son and a Mr. Leuthart had made arrangements with some one to buy chickens the morn-

ing after the theft; but he had not talked with the men offering them for sale. Defendant's counsel, on cross-examination, pointing out defendant's father, asked the witness if one of the men looked like him, to which he answered: "Looked something like him. I can't say for sure whether that is the gentleman or not." He did not remember seeing defendant in his store, but said defendant's father looked like one of the men. Baker's son and Leuthart were not witnesses on the trial; and it does not appear that defendant's father was not in the market at the time the chickens were offered for sale, along with whoever did arrange the sale. The testimony of Baker has little bearing on the identity of the men who were to bring the chickens in, for he did not talk with them, and seemed to know but little about their appearance.

By the questions certified to us, we are called upon only to say whether or not it was the duty of the circuit court on the former trial to direct a verdict for the defendant—whether or not that court had a discretion in the premises. While the evidence is all circumstantial, defendant's acts, together with all the facts and circumstances surrounding the commission of the offense charged, constitute evidence of his participation therein; whether sufficient to prove his connection with the crime would be a question for the jury; and we can not hold that the trial court was bound to direct a verdict of acquittal.

The ruling of the circuit court on the demurrer to defendant's plea will be sustained.

*Ruling sustained.*